CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 08 2018

JULIA C. DUDLEY, CLERK
BY: 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

SCOTT B. BRALL            )
                          )
   Plaintiff,            )
                          )     Civil Action No. 2:17-cv-00017
v.                        )
                          )
                          )     By: Hon. Michael F. Urbanski
NORFOLK SOUTHERN RAILWAY, )     Chief United States District Judge
   COMPANY                )
                          )
   Defendant.            )
                          )

## MEMORANDUM OPINION

This matter comes before the court on the parties' cross-motions for partial summary judgment. See Pl.'s Mot. Partial Summ. J., ECF 84; Def.'s Cross-Mot. Partial Summ. J., ECF No. 92. For the reasons discussed below, the court will **GRANT** plaintiff Scott Brall's Motion for Partial Summary Judgment and **DENY** Defendant Norfolk Southern Railway Company's ("Norfolk Southern") Cross-Motion for Partial Summary Judgment.

### I.    Background

Brall is employed by Norfolk Southern as a conductor. Pl.'s Br. Supp. Mot. Partial Summ. J. ("Brall MSJ Br."), ECF No. 84-1, at 2 (citing Deposition of Scott B. Brall ("Brall Dep."), ECF No. 84-2, at 6). On April 22, 2016, Brall reported to Norfolk Southern's Frisco, Tennessee yard ("Frisco"). Def.'s Mem. Supp. Cross-Mot. Partial Summ. J. & Opp. Pl.'s Mot. Partial Summ. J. ("NSRC MSJ Br."), ECF No. 93, at 2. Brall was part of a three-person train crew consisting of Brall, the conductor, Don Herron, the engineer, and Travis Maxwell, the brakeman. Id. at 3.

On April 22, 2016 at 7:00 a.m., Norfolk Southern engineer Barry Fannon certified that locomotive NS 3559 had been inspected, complied with all federal regulations, and was safe to operate. Brall MSJ Br. 2 (citing Videotaped Deposition of Barry Fannon ("Fannon Dep."), ECF No. 84-3 at 18 & Ex. 2). Norfolk Southern crew T50, which was working at Norfolk Southern's Yuma, Virginia yard ("Yuma"), used NS 3559 and Norfolk Southern locomotive NS 3023 to perform switching operations to build a train to be taken by the next transportation crew, T08, to Eastman Chemical Company's facility in Kingsport, Tennessee facility ("Eastman"). Id.

After the T50 crew built the completed train, they left the train with the rail cars coupled to a still-running NS 3559 on track #2 at Yuma, then rode NS 3023 the short distance to Frisco, where T50 went off duty. Id. The NS 3559-led train was considered a "hot train," which meant that the next crew was not required to run an air brake test on the cars or repeat the daily inspection. Id. The T08 crew reported to Frisco at 2:00 p.m., and took NS 3023 from Frisco to Yuma and coupled it to NS 3559 and the attached, loaded coal cars. Id. at 3; NSRC MSJ Br. 3.

According to Norfolk Southern, three things needed to be done before the NS 3559 train could depart. First, Brall and Maxwell had to ask Herron to release the "three-step" protection they had previously requested. NSRC MSJ Br. 4. Second, Herron need to inspect and "set up" NS 3559. Id. at 5. Third, T08 crew needed to perform a brake test. Id.

Brall exited NS 3023 and walked on the ground to NS 3559, where he climbed up to the walkway of NS 3559, unlocked the cab, flipped the breaker switch, and released the handbrake on the locomotive to prepare the train to leave for Eastman. Brall MSJ Br. 3. At

the same time, Maxwell connected the hoses between NS 3559 and NS 3023 and released the handbrakes on the first three railcars. Id. Immediately before entering the locomotive, Brall did not notice anything unusual on the walkway and had no issues with traction. NSRC MSJ Br. 3. Brall released the NS 3559 handbrake and took one or two steps back on the walkway toward the nose of the locomotive. Id. He slipped and fell, striking his head on the nose of the engine and landing hard on his buttocks on the walkway. Id. Maxwell found Brall dazed and sitting on the walkway. Id.

Norfolk Southern Road Foreman of Engines Anthony Thomas arrived and found a slippery substance on the NS 3559 walkway adjacent to the handbrake, and testified that the substance rendered NS 3559 defective. Id.; Deposition of Anthony Thomas ("Thomas Dep."), ECF No. 84-6, at 40. Norfolk Southern General Foreman of the Mechanical Department Joel Tumlin inspected the walkway and found a slippery substance extending from an area underneath the handbrake extended eight to ten inches into the walkway. Brall MSJ Br. 3; Deposition of Joel Tumlin ("Tumlin Dep."), ECF No. 84-7, at 11–13. Tumlin completed a work order reflecting that the walkway was defective and testified that the presence of the substance made the locomotive defective. Brall MSJ Br. 3. Finally, Norfolk Southern Trainmaster Jerry Taylor confirmed the presence of oil and grease on NS 3559's walkway, photographed the condition, and testified that the substance was a slipping and tripping hazard and made NS 3559 defective. Id. at 3–4; Deposition of Anthony Thomas ("Thomas Dep."), ECF No. 84-6, at 40.

Brall's Complaint pleads two causes of action: (1) Count I, a Federal Employers Liability Act ("FELA") negligence claim; and (2) Count II, a Locomotive Inspection Act "LIA") violation, which would establish strict liability under FELA.[1]

## II.     Cross Motions for Partial Summary Judgment

Both parties move for partial summary judgment on liability for Count II, the LIA claim. Three issues are at play. First: Was the locomotive "in use," as required for LIA liability to attach? Second: Does 49 C.F.R. § 229.119(c) govern foreign substances found on outdoor walkways? Third: Has Brall established that there is no genuine issue of material fact as to whether the foreign substance on NS 3559 violated Section 229.119(c)? The court answers all three questions in the affirmative.

### A.     Summary Judgment Standards

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

---

[1] Count III pleads causation, but does not otherwise plead a cause of action.

counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc.,

915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

## B.    The LIA and FELA

Count II of the Complaint seeks recovery under the LIA and FELA. FELA was enacted "to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees." Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 561 (1987). Both the LIA and FELA should be interpreted broadly in favor of a remedy for injured workers. See id. (FELA); Clemons v. Burlington N. Santa Fe Ry., CV 15-01788 SJO (JCx), 2016 WL 10586284, at *9 (C.D. Cal. Apr. 8, 2016) (LIA) (citing S. Ry. Co. v. Bryan, 375 F.2d 155, 158 (5th Cir. 1967)).

"FELA renders railroads liable for employees' injuries or deaths 'resulting in whole or in part from [carrier] negligence.'" CSX Transp., Inc. v. McBride, 564 U.S. 685, 688 (2011) (alteration in original) (quoting 45 U.S.C. § 51). Usually, a FELA plaintiff must show that the railroad's "negligence played a part—no matter how small—in bringing about the injury." Id. at 705 (internal quotations omitted).

The LIA modifies this rubric. The LIA provides, in relevant part:

A railroad carrier may use or allow to use a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—

(1)    are in proper condition and safe to operate without unnecessary danger of personal injury;

(2)     have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3)     can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. A FELA plaintiff may establish negligence per se by demonstrating that the railroad violated the LIA. See Coffey v. N.E. Ill. Reg. Commuter R.R. Corp. (Metra), 479 F.3d 472, 477 (7th Cir. 2007) (The LIA "establishes a safety standard, the failure to comply with that standard is negligence per se under the FELA." (emphasis added)); Koger v. Norfolk S. Ry. Co., Civ. No. 1:08-0909, 2009 WL 3242068, at *2 (S.D. W. Va. Oct. 2, 2009) (citing Coffey). Once a plaintiff establishes a violation of the LIA, he "thus is relieved of the burden of proving negligence." Coffey, 479 F.3d at 477 (quoting Crane v. Cedar Rapids & Iowa City Ry., 395 U.S. 164, 166 (1969)). The LIA joins several other acts to establish safety standards that create strict liability under FELA. See Fulk v. Norfolk S. Ry. Co., 35 F. Supp. 3d 749, 759 (M.D.N.C. 2014) (noting FELA liability for violations of the Boiler Inspection Act (the LIA's predecessor), the Safety Appliance Act, and the LIA, and collecting cases).

## C.     The Locomotive Was "In Use" Under the LIA

A locomotive must be "in use" before the LIA subjects a railroad to strict liability for violations thereof. See Miller v. CSX Transp., Civ. No. 2:06-0113, 2007 WL 1094389, at *3 (S.D. W. Va. Apr. 10, 2007). The parties dispute whether NS 3559 was "in use" at the time of Brall's accident. If NS 3559 was not "in use," the LIA does not apply. See id. Whether a locomotive was "in use" at the time of the accident is an issue of law. See Deans v. CSX Transp., Inc., 152 F.3d 326, 329 (4th Cir. 1998) ("Because the facts surrounding the accident are not in dispute, whether the train may be deemed to have been 'in use' at the time of the

accident for the purposes of the [Safety Appliance Act (the "SAA")] is a question of law for the court to decide rather than a question of fact for the jury . . . .").[2]

In Deans, the Fourth Circuit recognized that determining if a train is "in use" is "anything but clear." Id. The Fourth Circuit first considered and rejected the bright-line test propounded by the Fifth Circuit in Trinidad v. Southern Pacific Transportation Co., 949 F.2d 157, 189 (5th Cir. 1991), under which a train can only be in use if "the required inspections had . . . been completed." Deans, 152 F.3d at 329 (describing Trinidad test). The Fourth Circuit found it "inappropriate to base liability under the [SAA] on the mere happenstance of whether an employee chose to release the hand brakes or conduct an air brake test first." Id. Accordingly, the Fourth Circuit refused to look "simply at the completion or noncompletion of pre-departure tests." Id.

Instead, the Fourth Circuit adopted a multifactor test. "[T]he primary factors" courts must consider under the Deans test "are where the train was located at the time of the accident and the activity of the injured party."[3] Id. With respect to the first factor, the Fourth Circuit found that "[a] train may still be considered 'in use' even though it is motionless and not yet on the main track." Id. at 330. The train at issue "had not yet begun moving on the main track," but "it had already had its engine coupled to it and was standing on a track in

_____

[2] Deans was decided under SAA, a statute related to but legally distinct from the LIA and the Boiler Inspection Act, the LIA's predecessor. With the exception of a potentially important regulatory difference discussed below, "courts have applied case law interpreting the [LIA] to the [SAA], as well." Phillips v. CSX Transp., Inc., 190 F.3d 285, 288 n.2 (4th Cir. 1999); see also Deans, 152 F.3d at 329 (citing Angell v. Chesapeake & Ohio Ry. Co., 618 F.2d 260, 262 (4th Cir. 1980)).

[3] The Deans court described the location of the train and the activity of the injured parties as "the primary factors" courts should consider. Deans, 152 F.3d at 329. Yet, the Fourth Circuit did not indicate what other factors might be considered, and the court is not aware of any case law fleshing out those other factors. Additionally, in fashioning the Deans multifactor test, the Fourth Circuit relied in large part on Pinkham v. Maine Central Railroad Co., 874 F.2d 875 (1st Cir. 1989), a First Circuit case that described the two Deans factors as "determinative factors" in determining if a train is "in use" for LIA purposes. See Deans, 152 F.3d at 329 (citing Pinkham, 874 F.2d at 882).

the rail yard in preparation for imminent departure—not in storage or waiting to be moved into a repair location." Id. With respect to the second factor, Deans was a conductor, "part of the transportation crew and in no way involved in the repair or maintenance of the train." Id. The Fourth Circuit held that both factors weighed in favor of finding that the train was "in use." See id.

The Deans multifactor test has subsequently been widely adopted in both SAA and LIA cases. See, e.g., Wright v. Ark. & Mo. R.R. Co., 574 F.3d 612, 621 (8th Cir. 2009) (LIA case); Underhill v. CSX Transp., Inc., No. 1:05-CV-196-TS, 2006 WL 1128619, at *5 (N.D. Ind. Apr. 24, 2006) (adopting a modified version of the Deans multifactor test for determining whether rail vehicle is in use in SAA case).[4] The court finds that the Deans test is binding on the court and the appropriate test to determine if NS 3559 was "in use" under the LIA.[5]

Brall satisfies the first factor. In Deans, the train was not yet on the main track, but "was standing on a track in the rail yard in preparation for imminent departure—not in storage or waiting to be moved into a repair location." Deans, 152 F.3d at 330. Similarly, in McGrath v. Consolidated Rail Corp., 136 F.3d 838 (1st Cir. 1998), an LIA case adopting a similar multifactor test, the First Circuit found that a locomotive as in use when it "was not being stored on the yard track or awaiting removal to the engine house for repairs," but instead "'was running on the yard track and ready to move into service.'" Id. at 842 (quoting McCrath v. Consol. Rail Corp., 943 F. Supp. 95, 97 (D. Mass. 1996)). This is the same

---

[4] More post-Section 232.9 cases adopting Deans are discussed below.
[5] For reasons discussed below, the court rejects Norfolk Southern's contention that Section 232.9 does not modify the Deans test, at least with respect to LIA claims.

position at which NS 3559 was located: a fully constituted "hot" train awaiting imminent departure.

Brall also satisfies the second factor. <u>Deans</u> notes:

> Furthermore, Deans, as a conductor, was part of the transportation crew and in no way involved in the repair or maintenance of the train. It was his job to help put the train into motion and, at the time of his injury, he was attempting to release the hand brakes to do exactly that. The fact that the air brake test still needed to be completed, a test that could have been completed prior to the release of the hand brakes, is not in this case dispositive.

<u>Deans</u>, 152 F.3d at 330 (citing <u>McGrath</u>, 136 F.3d at 842). Brall is in the same position as Deans: a conductor. There is no indication from either party that Brall was in any way involved in the repair or maintenance of NS 3559. Instead, he was the conductor who would be engaging NS 3559 and its train in a job.

Both <u>Deans</u> factors are met. Accordingly, the court holds that NS 3559, the locomotive at issue, was "in use" under the LIA, and any violation of the LIA subjects Norfolk Southern to strict liability.

**D.      Section 232.9 Does Not Change the "In Use" Analysis Under the LIA**

The court's determination that NS 3559 was "in use" under the <u>Deans</u> test should be the end of the story. Not so, Norfolk Southern urges. Norfolk Southern asks this court to reject the <u>Deans</u> test in favor of 49 C.F.R. § 232.9(a), which was enacted in January 2001. <u>See</u> NSRC MSJ Br. 5. Section 232.9(a) provides, in full:

> A railroad subject to this part shall not use, haul, permit to be used or hauled on its line, offer in interchange, or accept in interchange any train, railroad car, or locomotive with one or more conditions not in compliance with this part; however, a railroad shall not be liable for a civil penalty for such action if such action is in accordance with § 232.15. <u>For purposes of this part</u>, a train, railroad car, or locomotive will be considered in use prior to departure but

after it has received, or should have received, the inspection required for movement and is deemed ready for service.

49 C.F.R. § 232.9(a) (emphasis added).

Norfolk Southern correctly observes that the Fourth Circuit decided <u>Deans</u> two and a half years before the Federal Railroad Administration promulgated Section 232.9. Norfolk Southern contends that Section 232.9 abrogated the <u>Deans</u> test and established a new definition of "in use" for SAA and LIA claims.

It is undisputed that the certain brake tests had not yet been performed. Based on the incomplete brake tests, Norfolk Southern identifies three regulations it claims were not satisfied at the time of Brall's injury: (1) 49 C.F.R. § 229.46(a)(1), which requires that "[b]efore each trip, the railroad shall know . . . [t]he locomotive brakes and devices for regulating pressures, including but not limited to the automatic and independent brake control systems, operate as intended"; (2) 49 C.F.R. § 232.105(a), which requires that "[t]he air brake equipment on a locomotive shall be in safe and suitable condition for service"; and (3) 49 C.F.R. § 232.105(g), which requires that "[w]hen taking charge of a locomotive or locomotive consist, an engineer must know that the brakes are in operative condition." <u>See</u> Def.'s Reply Mem. Supp. Cross-Mot. Partial Sum. J. ("NSRC Reply"), ECF No. 97, at 3–4 (citing 49 C.F.R. § 229.46(a)(1), 49 C.F.R. § 232.105(a), (g)).

Norfolk Southern's position is belied by Section 232.9(a)'s own language, the terms of which confirm that the Section's definition of "in use" applies "[f]or purposes of this part"— that is, 49 C.F.R. Part 232. The Federal Railroad Administration (the "FRA")

promulgated Part 232, and especially Section 232.9's "in use" definition, under the SAA, and

not the LIA[6]:

> In accordance with the 'use' or 'haul' language previously contained in the Safety Appliances Act (49 U.S.C. chapter 203), and with FRA's general rulemaking authority under the Federal railroad safety laws, the final rule retains the proposed requirement that any train, railroad car, or locomotive covered by this part will be considered 'in use' prior to departure but after it receives or should have received the necessary tests and inspections required for movement.

Brake System Safety Standards for Freight and Other Non-Passenger Trains and Equipment;

End-of-Train Devices, 66 Fed. Reg. 4104, 4149 (Jan. 17, 2001) (emphasis added). By

contrast, the FRA promulgated 49 C.F.R. Part 229 under the LIA. See Forrester v. Am.

Dieselelectric, Inc., 255 F.3d 1205, 1207 (9th Cir. 2001).

Two canons of statutory and regulatory interpretation guide the court. First, the

court's "interpretation of regulations begins with their text." Gilbert v. Residential Funding

LLC, 678 F.3d 271, 276 (4th Cir. 2012). When "the plain meaning of [a] regulation is clear,"

the court "need[s] look no further and should apply the regulation as it is written." Carlton

& Harris Chiropractic, Inc. v. PDR Network, LLC, 883 F.3d 459, 467 (4th Cir. 2018)

(internal quotations omitted) (quoting Gilbert, 678 F.3d at 276). Second, as Norfolk

Southern admits, the FRA's "interpretation of a regulation it administers is accorded

controlling deference so long as the interpretation is not contrary to the regulation or law

that authorized the regulation." Harris v. Norfolk S. Ry. Co., 784 F.3d 954, 962 (4th Cir.

2015); see also NSRC MSJ Br. 6–7 (citing Harris).

---

[6] To be sure, there is one reference to the LIA in Part 232: 49 C.F.R. § 232.13, which concerns preemption. The court interprets Section 232.13 to require courts to look toward LIA, SAA, and Commerce Clause case lines to determine if Part 232 preempts state law. There is nothing in Section 232.13 that suggests that Part 232 was promulgated under the LIA, and certainly nothing that suggests that Section 232.9(a)'s "in use" definition applies to LIA claims.

The court in <u>Kukowski v. Soo Line Railroad Co.</u>, File No. 16-cv-01260 (SRN/DTS), 2018 WL 834235 (D. Minn. Feb. 12, 2018), faced a similar argument to that which Norfolk Southern makes here. The <u>Kukowski</u> court was required to interpret 49 C.F.R. § 220.45, which "provides that 'any radio communication which is not fully understood or completed in accordance with the requirements of this part and the operating rules of the railroad, shall not be acted upon and shall be treated as though not sent.'" <u>Id.</u> at *6 (citing 49 C.F.R. § 220.45). The <u>Kukowski</u> court was left to determine if "the operating rules of the railroad" incorporates "only radio-related operating rules" or "<u>all</u> operating rules." <u>Id.</u>

The <u>Kukowski</u> court engaged in a similar regulatory analysis to what this court must undertake. The <u>Kukowski</u> court found the regulation's reference to "this part" was "[p]articularly instructive." <u>Id.</u> at *7. That Part—Part 220—solely concerns "communications in connection with railroad operations." <u>Id.</u> Given the regulation's inclusion of "this part," the <u>Kukowski</u> court found "it would defy principles of statutory construction to interpret the [relevant] language . . . as referencing anything other than the operating rules related to" Part 220. <u>Id.</u>

The argument for circumscribing Section 220.45's reference to "the operating rules of the railroad" relating to Part 220 was strong; the argument for finding that Section 232.9's "in use" definition only applies to Part 232 is even stronger. There is only one plain meaning of "[f]or purposes of this part": Section 232.9's "in use" definition only applies for purposes of Part 232, which only implicates the SAA. Norfolk Southern does not appear to contest that the FRA's regulation, and its interpretation thereof, is reasonable. Moreover, Brall's sole strict liability claim arises under the LIA—not the SAA. Part 232—and Section 232.9's

13

definition of "in use"—is of no moment to Brall's LIA claim. The court finds no reason to depart from the Deans test, which is still binding on this court.

Norfolk Southern makes two arguments to escape this conclusion. First, Norfolk Southern argues that the cases Brall cites are all pre-Section 232.9 and asks the court to follow Clark v. Norfolk Southern Railway Co., Civ. No. 12-C-222 (Cir. Ct. Mingo Cnty. W.V. Sept. 21, 2015), an unpublished West Virginia state court. The court declines to do so.

A canvass of the post-Section 232.9 case law shows courts still readily apply the Deans test in LIA cases. See, e.g., Wright, 574 F.3d at 621 (relying on Deans and holding that the "determination of whether a train is 'in use' is to be made based upon the totality of the circumstances at the time of the injury"); Miller, 2007 WL 1094389, at *3 (applying Deans); Hinkle v. Norfolk S. Ry. Co., No. 2:05-cv-574, 2006 WL 3783521, at *3 (S.D. Ohio Dec. 21, 2006) (holding that Deans' "approach better tracks the goals of the statutory scheme than the overly restrictive Trinidad approach and better comports with the requisite liberal construction the Court must accord such a statutory scheme"); Horibin v. Providence & Worcester R.R. Co., 352 F. Supp. 2d 116, 120–21 (D. Mass. 2005) (applying McGrath, 136 F.3d 838, a First Circuit case relied on by Deans in prescribing a multifactor test); Host v. BNSF Ry. Co., 460 S.W.3d 87, 102 (Mo. Ct. App. 2015) (applying Deans in affirming trial court decision that locomotive was "in use"); Balough v. Ne. Ill. Reg'l Commuter R.R. Corp., 950 N.E.2d 680, 698–99 (Ill. Ct. App. 2011) (applying Deans and similar cases). Even Coleman v. Norfolk Southern Railway Co., Civ No. 14-107-HRW, 2018 WL 472995, --- F. Supp. 3d ---- (E.D. Ky. Jan. 18, 2018), an LIA case upon which Norfolk Southern relies to

show that Section 229.119(c) was not violated, fails to mention Section 232.9 in its "in use" analysis. See id. at *4–5.

Further, on the one hand, the court has found no LIA case that cites Section 232.9. On the other hand, the court has found multiple post-Section 232.9 SAA cases that continue to apply Deans. See, e.g., Kobe v. Canadian Nat'l Ry. Co., Civ. No. 06-3439 (RHK/RLE), 2007 WL 2746640, at *5 (D. Minn. Sept. 18, 2007) (adopting Underhill, in which the court "adopted the multi-factor approach set forth by the Fourth Circuit" in Deans); Underhill, 2006 WL 1128619, at *5.

Nor does Clark help Norfolk Southern. Clark was an SAA case: The plaintiff alleged he suffered an injury on a caboose and "the SAA [was] applicable to the caboose." Clark, Civ. No. 12-C-222, slip op. at 3–4. The obvious problem with Clark is that its SAA analysis, even if correct, is not applicable to LIA cases. Brall sues under the LIA, and the court has already held that Section 232.9 does not apply to the LIA.

Further damaging Norfolk Southern's position, it also appears Clark is the only case to apply Norfolk Southern's suggested Section 232.9 bright-line test. The court can find only one other case that discusses Section 232.9 in relation to "in use."[7] In Nygaard v. BNSF Railway Co., No. A12-1566, 2013 WL 2460198 (Min. Ct. App. June 10, 2013), a Minnesota state case, a plaintiff raised SAA claims. The Minnesota Court of Appeals applied "the totality of the circumstances test" derived from Deans and Wright. Notably, Nygaard found

---

[7] In Lafferty v. Norfolk Southern Railway Co., No. 3:08 CV 2647, 2009 WL 3817603 (N.D. Ohio Nov. 12, 2009), the plaintiff cited Section 232.9 for the proposition that "it was unlawful for [the railroad] to operate a railroad car with defective br[ake]s." Id. at *1. The court neither determined whether the train was "in use" nor otherwise discussed Section 232.9.

Section 232.9 "relevant"—but not dispositive— to whether a train was "in use."[8] Id. at *7 n.4.

As a last gasp, Norfolk Southern claims that "in use" is a unitary concept: If a train is not "in use" for purposes of Part 232, it cannot be "in use" for purposes of Part 229 (or, presumably, other Parts of Chapter 49). Norfolk Southern offers no support for this argument, nor can the court divine any support from the case law. In fact, the SAA's requirements and the LIA's requirements are quite different, so it makes perfect sense that the definition of "in use" under Part 232, which concerns the SAA, would be different than the definition of "in use" under Part 229, which concerns the LIA. See Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc., 781 F.3d 656, 674 (3d Cir. 2015) (Hardiman, J., dissenting) (detailing differences between SAA and LIA and noting SAA "contains some very specific requirements for railroads" not found in the LIA). Norfolk Southern's argument provides no basis for the court to depart from Deans. The Deans test is still controlling law, and the court has already held that NS 3559 was "in use" under Deans. Section 232.9 does nothing to change that holding.

## E.    Section 229.119(c) Applies to Locomotive Walkways

Brall claims that Norfolk Southern violated Section 229.119(c), which provides: "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing." 49 C.F.R. § 229.119(c). If Norfolk Southern did not

---

[8] Nygaard held that Section 232.9 only applies to civil penalties levied by the federal government, and not civil liability for injuries suffered by employees. See Nygaard, 2013 WL 2460198, at *7 n.4. Brall does not make, nor does the court consider, that argument, as the court has already held that Section 232.9 does not abrogate the Deans test for LIA claims.

violate Section 229.119(c), the parties agree that Brall cannot establish negligence per se for a violation of the LIA.

Norfolk Southern argues that Section 229.119(c) "pertains to conditions inside the cab of a locomotive, not on walkways on the exterior of a locomotive." NSRC Reply 6. Norfolk Southern relies on Coleman v. Norfolk Southern Railway Co., 2018 WL 472995, for the proposition that Section 229.119(c) only regulates locomotive interiors.[9]

Coleman, a locomotive engineer, was operating a locomotive during a winter storm, and testified that "the locomotives and their exterior passageways were snow covered when he . . . arrived." Id. at *2. As Coleman "was walking on the exterior engine platform from the second unit to the lead locomotive, . . . [h]e slipped and fell on the engine walkway." Id.

The Coleman court found that Section 229.119 did not apply to the exterior passageway on which Coleman slipped. Coleman's analysis on this point is cursory:

> This regulation pertains "cabs, passageways and compartments", all areas which are located in interior areas of the locomotive. There is absolutely no mention of exterior walkways in this regulation. Moreover, there is no mention in this regulation of any requirement that the railroad keep locomotive exterior walkways (which do not have a roof and are open to the elements and precipitation) completely free of naturally occurring precipitation such as rainwater, snow, ice or sleet.
>
> Notably, Plaintiff's liability expert witness, Michael O'Brien, candidly admitted the word "walkways" does not appear in the title or the text of this regulation.

Id. at *6. The court respectfully disagrees with Coleman's Section 229.119(c) analysis.

Coleman cannot be reconciled with the FRA's own guidance on Section 229.119(c), which renders the distinction between a "passageway" and a "walkway," to the extent such a

---

[9] During oral argument, the court noted that Coleman had filed an interlocutory appeal. The Sixth Circuit has subsequently declined to accept an interlocutory appeal. See Order, Coleman v. Norfolk S. Ry. Co., Civ No. 14-107-HRW, ECF No. 71 (Apr. 11, 2018).

distinction exists, a distinction without a difference. The FRA issues the Motive Power and Equipment Compliance Manual (the "Manual"), which "provides technical expertise and direction in the execution and administration of real safety programs" and "promotes an understanding of and compliance with Federal standards to inspect locomotives." Motive Power and Equipment, Federal Railroad Administration, https://www.fra.dot.gov /Page/P0044 (last accessed May 3, 2018). The Manual provides the following guidance on Section 229.119(c):

> Accumulations of oil, water, debris, and other items on passageway, [sic] walkways, cab control compartment floors, or engine compartment floors should be of such a nature as to present a **potential hazard and unsafe condition for** any person who **would use them** (e.g., slipping, tripping, or does not provide secure footing. When an inspector discovers these conditions, he/she should also determine the source and take appropriate enforcement action.

Federal Railroad Administration, Motive Power and Equipment Compliance Manual 8-53 (July 2012) (emphasis in original). The FRA's guidance is unambiguous: To the extent there is a difference between a "walkway" and a "passageway," Section 229.119(c) applies to both. In other words, the FRA's own guidance confirms that oil, or any other slippery substance, found on a passageway or walkway constitutes a violation of Section 229.119(c) and, therefore, the LIA.

The court finds that it must defer to the FRA's guidance. The Supreme Court advises that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency." United States v. Mead Corp., 533 U.S. 219, 234 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944)). Moreover, "Auer ordinarily calls for deference to an agency's

interpretation of its own ambiguous regulation."[10] Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 154 (2012) (citing Auer v. Robbins, 519 U.S. 452, 461–62 (1997)); accord NSRC MSJ Br. 6–7 ("The FRA's interpretations of such regulations are accorded deference so long as the interpretations are not contrary to the regulations or law that authorized the regulations." (citing Harris, 784 F.3d at 962)).

Section 229.119(c) requires that railways keep "passageways" clear of obstructions and hazards, but Part 229 does not define "passageways" or "walkways". See 49 C.F.R. §§ 229.5 & 229.119. Coleman implicitly defines "passageways" as interior pathways and "walkways" as exterior pathways, but provides no analysis explaining why these definitions are appropriate. "When a word is not defined by statute, [a court] normally construe[s] it in accord with its ordinary or natural meaning." Smith v. United States, 508 U.S. 223, 228 (1993). Because Part 229 does not define "passageways," the court must therefore examine the term's "ordinary or natural meaning." Id. Merriam-Webster defines a "passageway" as "a way that allows passage." Passageway, Merriam-Webster (online ed.). Similarly, Merriam-Webster defines "walkway" as "a passage for walking." Walkway, Merriam-Webster (online ed.). Neither definition betrays any meaningful difference sufficient to justify the distinction made in Coleman.

With the ordinary definitions of "passageways" and "walkways" in mind, the court finds that Section 229.119(c) is ambiguous: It is not clear from the face of the regulation if "passageway" only refers to interior pathways. Because Section 229.119(c) is ambiguous, the court follows Auer v. Robbins, 519 U.S. 452, 461–62 (1997), and defers to the FRA's

---

[10] Auer deference is not appropriate when an "interpretation is plainly erroneous or inconsistent with the regulation," or "does not reflect the agency's fair and considered judgment on the matter in question." Christopher, 567 U.S. at 156 (internal quotations and citations omitted). Neither scenario applies here.

guidance, which instructs that both "passageways" and "walkways" fall under Section 229.119(c)'s ambit. Cf. Edwards v. CSX Transp. Inc., 821 F.3d 758, 761 (applying deference to the Manual's interpretation of a different regulation in Part 229).

Norfolk Southern's sole response about the Manual is that "[t]here is nothing in [the Manual's] guidance . . . stating that § 229.119(c) applies to locations outside the cab of a locomotive. Clearly, the regulation applies to locations inside the cab, but it does not apply to locations outside the cab." Def.'s Post-Hearing Mem. ("NSRC Post-Hearing Mem."), ECF No. 115, at 9. Norfolk Southern's response is unavailing. By adopting Coleman's analysis, the court interprets Norfolk Southern as arguing that a "passageway" is enclosed and a "walkway" is not. The Manual instructs the court that to the extent that distinction exists, it is irrelevant: Section 229.119(c) covers both "passageways" and "walkways." To the extent Norfolk Southern argues that the Manual states that Section 229.119(c) "does not apply to locations outside the cab," the court sees nothing in the Manual to support that position.

The court's holding that Section 229.119(c) applies to outdoor walkways finds overwhelming support in the case law. See, e.g., Wells v. CSX Transp. Inc., No. 1:08-CV-00837, 2010 WL 3703711, at *4–5 (S.D. Ohio Sept. 17, 2010) (treating "walkway" and "passageway" as synonymous and noting that "Plaintiff's case is about the safety of the walkway between locomotives, an issue falling under the LIA"); Riley v. Union Pac. R.R. Co., No. CIV-09-155-KEW, 2010 WL 1929623, at *1 (E.D. Okla. May 12, 2010) ("Plaintiff stepped on a rusted metal plate in the floor of the passageway/walkway of the locomotive," therefore violating the LIA); McClain v. Norfolk S. Ry. Co., No. 3:07CV2389, 2009 WL

1812090, at *1 (N.D. Ohio June 23, 2009) (holding Section 229.119(e) applies to "walkway[s]"); <u>Kehdi v. BNSF Ry. Co.</u>, Civ. No. 06-6242-AA, 2007 WL 2994600, at *4 (D. Ore. Oct. 11, 2007) (citing case for the proposition that oil on locomotive walkways can support LIA claim); <u>Haworth v. Burlington N. & Santa Fe Ry. Co.</u>, 281 F. Supp. 2d 1207, 1213 (E.D. Wash. 2003) (same); <u>McGinn v. Burlington N. R.R. Co.</u>, 848 F. Supp. 827, 830 (N.D. Ill. 1994) (noting that 229.119(c) claims "generally occur," in relevant part, "when a railroad has allowed foreign substances to accumulate on locomotive surfaces or walkways").

Indeed, <u>Coleman</u> appears to be the only case to reach an opposite conclusion. For the reasons stated above, the court respectfully disagrees with <u>Coleman</u> and finds that Section 229.119(c) applies when a foreign substance creates a tripping hazard on a locomotive's exterior walkway.

### F.   Summary Judgment Is Appropriate

Finally, Norfolk Southern latches onto an argument proffered as a hypothetical by the court at oral argument: A jury must "determine whether the substance on the walkway created an unnecessary danger of personal injury and whether that substance caused Brall to fall." NRSC Post-Hearing Mem. 17. Norfolk Southern's argument is simple: Before Brall slipped, no one saw the substance, and there was no evidence that Brall slipped on the substance. See <u>id.</u>

The fact that no one saw the substance is of no moment. The LIA imposes strict liability on railroads when the LIA is violated. Brall only has to prove that there was a slippery substance on the walkway. See <u>Riley</u>, 2010 WL 1929623, at *3. He does not have to demonstrate that anyone saw the substance before his injury occurred. The deposition

testimony confirms that some slippery substance was indeed present on the walkway. See Taylor Dep. 25, 31–32 (testifying that he found oil and grease on the walkway, which made NS 3559 defective); Tumlin Dep. 11–13 (testifying that he saw a slippery substance on the walkway, which made NS 3559 defective); Deposition of Carey R.L. Stanley ("Stanley Dep."), ECF No. 117, at 12, 17 (testifying that "there was oil all over the end of the platform where it had been tracked," which made NS 3559 defective); Thomas Dep. 40 (agreeing that there was a slippery substance on the walkway and he now would have marked NS 3559 as defective). The court holds that presence of the slippery substance on the walkway of NS 3559 violates the LIA and rendered NS 3559 defective.

Norfolk Southern's argument that "there was no evidence that Brall slipped on the substance" is belied by the deposition testimony. Taylor testified that he agreed Brall slipped and fell on the oil. Taylor Dep. 45–46. Stanley testified that the substance had been tracked all over the platform. Stanley Dep. 12. Thomas testified that he had no doubts Brall slipped and fell on the oil. Thomas Dep. 27. Further, Thomas testified that he observed a black substance on the buttocks area of Brall's trousers. Id. at 55–56. And Brall testified that he did, in fact, fall in oil. Brall Dep. 39. This evidence is uncontroverted.

In the face of this evidence, Norfolk Southern must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares, 407 F.3d at 635. Instead, Norfolk Southern points to no evidence at all. Nor can the court find any evidence in the record supporting a claim that Brall did not slip on the substance.

Finally, Brall is correct that <u>Gregory v. Missouri Pacific Railroad Co.</u>, 32 F.3d 160 (55th Cir. 1994), is inapposite. In <u>Gregory</u>, the Fifth Circuit recognized that "[t]here was conflicting evidence on whether the oil constituted an unnecessary peril." <u>Id.</u> at 163. Because of the conflicting evidence, the Fifth Circuit held that the question of whether the oil "constituted an unnecessary peril . . . should have been presented to the jury." <u>Id.</u> There is no conflicting evidence here: Every deponent cited testified that there was oil on the walkway, which rendered NS 3559 defective. Given Norfolk Southern's lack of evidence suggesting that Brall did not fall on the oil, the court finds no reason to submit that question of liability to the jury.

### III.  Conclusion

NS 3559 was "in use" at the time of the injury, and the oil on NS 3559's walkway violated Section 229.119(c) and the LIA. The court therefore will **GRANT** Brall's Motion for Partial Summary Judgment and **DENY** Norfolk Southern's Cross-Motion for Partial Summary Judgment. This case will proceed to trial on the issues of injury and damages only.

Entered: 05-08-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

23